IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DREW McMANIGLE, as Chapter 11 Trustee of ESCAMBIA OPERATING COMPANY, LLC and ESCAMBIA ASSET COMPANY, LLC,** )<br>)<br>)<br>)<br>) | |
| Plaintiff, )<br>) | |
| v. ) | CIVIL ACTION NO. 1:24-00295-KD-N |
| )<br>**MONCLA WORKOVER & DRILLING OPERATIONS, LLC,** )<br>)<br>) | |
| Defendant. ) | |

## ORDER

This action is before the Court on the Motion to Transfer Venue, (Doc. 12), filed by Defendant Moncla Workover & Drilling Operations, LLC ("Moncla"); the Response, (Doc. 23), filed by Plaintiff Drew McManigle ("Trustee" or "Plaintiff"), as chapter 11 trustee of Escambia Operating Company, LLC and Escambia Asset Company, LLC (collectively, "Escambia"); and Moncla's Reply, (Doc. 34). Upon consideration, and for the reasons below, the motion is **DENIED**.

I.     Facts

On April 2, 2023, Escambia filed their petitions for chapter 11 bankruptcy relief in the Bankruptcy Court for the Southern District of Mississippi (the "Bankruptcy Court"). The Trustee was appointed Chapter 11 trustee on October 25, 2023. (Doc. 22 at 4).

Moncla was hired to perform workover services on Escambia's GB Booth 36-14 Well (the "Booth Well") in Atmore, Alabama. (Doc. 22 at 4). On January 1, 2024, over 1,000 feet of pipe was dropped into the Booth Well (the "Incident") during workover operations, rendering the Booth Well inoperable. (Id.).

1

On August 21, 2024, the Trustee filed Escambia's complaint for damages arising from the Incident in this Court. (Doc. 1). The Complaint asserts claims for negligence and negligent supervision—alleging that Escambia hired Moncla to provide services on the Booth Well and that Moncla's employees negligently damaged it. (Doc. 1).

On November 4, 2024, Moncla filed a motion to transfer venue to the Southern District of Mississippi in order to refer the case to the Bankruptcy Court for the Southern District of Mississippi where the Bankruptcy Case is currently pending. (Doc. 12).

Although the Bankruptcy Case is pending in the Southern Division of the Southern District of Mississippi (located in Gulfport, Mississippi), the presiding bankruptcy judge is located in Jackson, Mississippi. (Doc. 22 at 5). As a result, proceedings in the Bankruptcy Case are conducted in Jackson. (Id.). Mobile, Alabama is more proximate than either Gulfport or Jackson to the location of the Incident and to the location of Escambia's operations and documents. (Id.).

Escambia's physical records relevant to this dispute are located in Atmore, Alabama where Escambia's Big Escambia Creek gas plant is located. (Doc. 22 at 5). Escambia also has electronic records that can be accessed from any location. (Id.). The Trustee resides in Houston, Texas. (Id. at 4). No operations or management of Escambia are conducted in Mississippi. (Id.). Moncla is based in Lafayette, Louisiana. (Id. at 5).

The Trustee has retained counsel for this case on a contingent fee basis. (Id.). The Trustee's lead lawyers for this case are in Houston, Texas, and his local lawyer resides in Mobile, Alabama. (Id.). Because of the contingent fee arrangement, the Trustee and the estate are not responsible for the fees and costs of lead counsel unless and until there is a recovery. (Id.). The Trustee does not believe the costs of litigating in Mississippi would be materially different than litigating in

Alabama. (Id.). The Trustee is also willing to use Zoom or a similar platform to conduct depositions remotely for the convenience of the parties and witnesses. (Id.).

To the Trustee's knowledge, the bankruptcy court in Mississippi has not spent time addressing the facts and legal issues of this case aside from approving the retention of counsel. (Id. at 5–6). The Trustee is charged with protecting the interests of the Escambia bankruptcy estate, and the Trustee does not believe that transfer of this case to the bankruptcy court is necessary to promote the economic and efficient administration of the bankruptcy estate. (Id.). The Trustee believes that litigating in the Southern District of Alabama is in the best interests of the bankruptcy estate, particularly given that the Incident occurred in Alabama. (Id.).

### A. Driving Distances of Parties and Witnesses

Moncla's home city of Lafayette, Louisiana is 254.8 miles or 3 hours and 43 minutes from Mobile. (Doc. 22 at 10). Lafayette is 228.3 miles or 3 hours and 21 minutes from Jackson. (Id. at 11). Lafayette is 189.1 miles or 2 hours and 53 minutes from Gulfport. (Id. at 12).

Moncla has filed a third-party claim asserting that Eastern Energy Services, Inc. ("Eastern") is responsible for the Incident. (Doc. 13).[1] Moncla alleges that Eastern is located in Laurel, Mississippi. (Id.). Laurel is 109.2 miles or 1 hour and 53 minutes from Mobile. (Doc. 22 at 13). Laurel is 89.5 miles or 1 hour and 29 minutes from Jackson. (Id. at 14). Laurel is 102.9 miles or 1 hour and 46 minutes from Gulfport. (Id. at 15).

Moncla considers Anthony Bolin a "key fact witness." (Doc. 34 at 3).[2] On the Trustee's information and belief based on a public tax records search, Bolin lives in Columbia, Mississippi.

---

[1] Moncla also filed a third-party claim against WLS Incorporated, (Doc. 13), but later filed a notice of voluntary dismissal as to WLS Incorporated. (Doc. 32).

[2] Moncla also lists Glen Chiasson as a witness. (Doc. 13 at 10). The Trustee provided driving distances between Chiasson's believed home and Mobile, Jackson, and Gulfport, but Moncla's

3

(Doc. 23 at 4). Columbia is 129.1 miles or 2 hours and 10 minutes from Mobile. (Doc. 22 at 22). Columbia is 84.2 miles or 1 hour and 27 minutes from Jackson. (Id. at 23). Columbia is 90.1 miles or 1 hour and 43 minutes from Gulfport. (Id. at 24).

**II.   Law**

Numerous federal statutes concern proper venue. In re Bruno's, Inc., 227 B.R. 311, 321 (Bankr. N.D. Ala. 1998). To determine the applicable statute and proper venue, a distinction must be drawn between a bankruptcy "case" and a "proceeding." Id. A bankruptcy "case" is commenced upon the filing of a petition under one of the chapters of the Bankruptcy Code. Id. "In contrast, 'proceeding' in bankruptcy 'refers to a litigated matter arising within a case during . . . the course of administration of an estate.'" Id. (quoting 2 Collier on Bankruptcy ¶ 301.03 (Matthew Bender 15th ed. 1994) (footnote omitted)).

"Proceedings in bankruptcy are further divided into 1) civil proceedings arising under the Bankruptcy Code or 2) civil proceedings arising in or 3) related to a bankruptcy case initiated under the Bankruptcy Code." Id. Proceedings "arise under" the Bankruptcy Code when they involve a cause of action created or determined by a statutory provision of title 11. In re Harnischfeger Indus., Inc., 246 B.R. 421, 432 (Bankr. N.D. Ala. 2000). Proceedings "arise in" the Bankruptcy Code when they involve administrative matters that arise only in bankruptcy cases (i.e., they are not based on any right expressly created by title 11, but they would have no existence outside of the bankruptcy). Id. Finally, a civil proceeding is "at least related to" the bankruptcy case where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id. The Eleventh Circuit interprets "related to" broadly: "An action

---

reply argues that "Chiasson is not personally a party to this action, and there is no need to address" the arguments regarding him. (Doc. 34 at 3).

4

is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and which in any way impacts upon the handling and administration of the bankruptcy estate." Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990).

Proper venue of proceedings in bankruptcy is governed by 28 U.S.C. § 1409. Under 28 U.S.C. § 1409(d), a trustee may commence a bankruptcy proceeding after "the commencement of such case from the operation of the business of the debtor only in the district court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought." 28 U.S.C. § 1409(d). Thus, proper venue at the commencement of a trustee-initiated proceeding is governed by 28 U.S.C. §1391 (the applicable nonbankruptcy venue provision).

When a motion to change venue of a proceeding related to a bankruptcy case is brought, a separate consideration is whether 28 U.S.C. § 1404 or 28 U.S.C. § 1412 applies. 1 Howard J. Steinberg, Bankruptcy Litigation § 2:16 (2024).[3] Some courts have determined that section 1404(a) applies to venue-transfer motions of bankruptcy proceedings that are merely "related to" the bankruptcy case.[4] This determination results from a comparison between the language of section

---

[3] Which provision applies is important because a section 1404 transfer has heightened requirements. Samuel M. Kidder, Clarifying the Venue Transfer Standard for Bankruptcy-Related Civil Proceedings, 36 Cal. Bankr. J. 321, 323 (2024). For example, section 1404(a) only allows venue to be transferred to a district where the action might have been brought while section 1412 has no such limitation. Id. Furthermore, a section 1404(a) "transfer must be both in the interest of justice and convenient to the parties (whereas section 1412 uses a disjunctive test)." Id.

[4] Ni Fuel Co., Inc. v. Jackson, 257 B.R. 600 (N.D. Okla. 2000); Tultex Corp. v. Freeze Kids, L.L.C., 252 B.R. 32, 35–36, 44 Collier Bankr. Cas. 2d (MB) 630 (S.D. N.Y. 2000); Searcy v. Knostman, 155 B.R. 699, 706 (S.D. Miss. 1993); In re Schlein, 182 B.R. 110, 113 (Bankr. E.D. Pa. 1995); Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C., 408 B.R. 90, 97 (Bankr. S.D. Tex. 2009); Onewoo Corporation v. Hampshire Brands, Inc., 566 B.R. 136, 140, 63 Bankr. Ct. Dec.

1409 (which provides for venue "of proceedings arising under title 11 or arising in *or related to* cases under title 11") and the language of section 1412 (which merely refers to "a case or proceeding under title 11"). Compare 28 U.S.C. § 1409 (emphasis added) with 28 U.S.C. § 1412. Other courts, however, apply section 1412 to motions to transfer venue of proceedings "related to" a bankruptcy case.[5] One reason is that section 1412's plain language states that it applies to a change of venue concerning a case or proceeding under the Bankruptcy Code, while the language in section 1404(a) "refers only to a 'civil action' and fails to mention language peculiar to bankruptcy jurisdiction and venue statutes, including 'case,' 'proceeding,' and 'Title 11.'" In re Bruno's, Inc., 227 B.R. at 323.

### III.    Analysis

Moncla moves for a transfer of venue pursuant to section 1412. Moncla argues that this litigation falls under title 11 and that transfer is warranted in the interests of justice and for the convenience of the parties. The Trustee counters with several arguments. *First*, that section 1404(a) governs venue transfer and, under that provision, transfer is not warranted. *Second*, that transfer is not warranted under section 1412 because neither the interest of justice nor the convenience of the parties supports transfer.

---

(CRR) 266 (Bankr. S.D. N.Y. 2017); Fitzgibbon v. Radack, 597 B.R. 836 (E.D. Va. 2019); Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC, 620 B.R. 456, 466 (S.D. N.Y. 2020).

[5] In re Harnischfeger Industries, Inc., 246 B.R. 421, 434–35 (Bankr. N.D. Ala. 2000); Matter of GEX Kentucky, Inc., 85 B.R. 431, 434 (Bankr. N.D. Ohio 1987); In re Harwell, 381 B.R. 885, 891 n.4 (Bankr. D. Colo. 2008); Creekridge Capital, LLC v. Louisiana Hosp. Center, LLC, 410 B.R. 623, 628 (D. Minn. 2009); Dunlap v. Friedman's, Inc., 331 B.R. 674, 680 (S.D. W. Va. 2005); City of Liberal, Kansas v. Trailmobile Corp., 316 B.R. 358, 362 n.2 (D. Kan. 2004); KFC Corp. v. Wagstaff, 502 B.R. 484 (W.D. Ky. 2013); Hilton Worldwide, Inc. Global Benefits Administrative Committee v. Caesars Entertainment Corp., 532 B.R. 259, 273 (E.D. Va. 2015).

### A. This litigation is "related to" the Bankruptcy Case.

This litigation involves claims against Moncla for negligence and negligent supervision. Moncla cites In re Bruno's to argue that this litigation "falls under title 11" because it is "related to" a bankruptcy proceeding. (Doc. 12 at 4) (In re Bruno's, Inc., 227 B.R. at 321). In re Bruno's explains the difference between a bankruptcy case and the three types of bankruptcy proceedings. This litigation is not a bankruptcy case because it was not commended upon the filing of a petition under one of the chapters of the Bankruptcy Code. See id. This litigation does not "arise under" the Bankruptcy Code because it does not involve a cause of action created or determined by a statutory provision of title 11. See id. This litigation does not "arise in" the Bankruptcy Code because the negligence and negligent supervision claims would have an existence outside of the bankruptcy. See id. This litigation does, however, "at least relate to" the Bankruptcy Case because the outcome of this litigation could conceivably have an effect on the bankruptcy estate. See In re Harnischfeger Indus., Inc., 246 B.R. 421, 432 (Bankr. N.D. Ala. 2000).

"An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and which in any way impacts upon the handling and administration of the bankruptcy estate." Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990). Here, the outcome of this litigation could positively or negatively impact the bankruptcy estate. As explained by Moncla, "any recovery by the Debtors would remit to the bankruptcy estates." (Doc. 12 at 4). Under the Eleventh Circuit's broad interpretation, this litigation "relates to" the Bankruptcy Case.

### B. Section 1412 governs whether transfer of venue is proper.

Moncla argues that section 1412 governs the motion to transfer while the Trustee argues that section 1404(a) governs. To recap, there is a split of authority as to which section applies to civil

proceedings that "relate to" cases under title 11. Some courts hold that section 1412 does not apply to civil proceedings that are merely "related to" cases under title 11, but many courts have disagreed.

For example, in Dunlap v. Friedman, the court undertook a deep analysis and concluded that the appropriate statute for venue transfer in related-to actions is section 1412. Dunlap v. Friedman's, Inc., 331 B.R. 674, 677 (S.D. W. Va. 2005). The court relied on the conclusion of the "principal commentator" that section 1412 applies in civil proceedings related to cases under title 11. Id. (citing 1 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 4.04 [1] (15th ed. 2005). The court also relied on "a decision that appears to have been painstakingly researched," which concluded the same. Id. (citing City of Liberal, Kansas v. Trailmobile Corp., 316 B.R. 358, 362 (D. Kan. 2004)). Ultimately, the court supported its decision with the legislative history of section 1412, practical considerations, and textual analysis of both sections 1404(a) and 1412. Id. Likewise, bankruptcy courts in Alabama have concluded—with well-reasoned opinions—that section 1412 governs transfers of venue in cases that are "related to" bankruptcy cases. See In re Bruno's, Inc., 227 B.R. 311, 321 (Bankr. N.D. Ala. 1998); In re Harnischfeger Indus., Inc., 246 B.R. 421, 434 (Bankr. N.D. Ala. 2000).

This Court chooses to follow the reasoning in Dunlap, In re Bruno's, and In re Harnischfeger and concludes that section 1412 governs motions to transfer venue in cases that are "related to" bankruptcy cases. Here, this litigation is "related to" the Bankruptcy Case under Eleventh Circuit law. Therefore, section 1412 governs whether transfer of venue is proper.

**C. Transfer of venue is not warranted under section 1412.**

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The

8

disjunctive "or" in this provision means that a proceeding "is transferrable upon a sufficient showing of either the interest of justice or convenience of the parties." In re Harnischfeger Indus., Inc., 246 B.R. at 435. Still, a section 1412 transfer requires "a case-by-case analysis that is subject to broad discretion of the court." Id. The moving party bears the burden of showing that transfer is appropriate by a preponderance of the evidence. Id.

### i. The "interest of justice" prong does not warrant a transfer.

"The 'interest of justice' prong is 'a broad and flexible standard which must be applied on a case-by-case basis.'" Id. (quoting In re Manville Forest Prods. Corp., 896 F.2d 1384, 1391 (2d Cir. 1990)). Courts consider seven factors: (1) economics of estate administration; (2) presumption in favor of the home court; (3) judicial efficiency; (4) ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders, by those familiar with its laws; (6) enforceability of any judgment rendered; (7) plaintiff's original choice of forum. See, e.g., id. at 436–37.

Often, the most important factor is the economics of estate administration. Id. at 437. Courts should consider the impact on all litigants, but "the analysis regarding venue should center on the impact on the debtor." Id. at 438. Here, Moncla makes "economics of estate administration" arguments such as the burdens on the Debtor's and the Trustee's counsel and the Bankruptcy Court's institutional knowledge of the Debtor. (Doc. 12 at 6). But the Trustee—who is charged with acting in the Debtor's best interest—argues against transfer. The Trustee "does not believe that transfer of this case to the bankruptcy court is necessary to promote the economic and efficient administration of the bankruptcy estate." (Doc. 22 at 6). The Trustee explains that counsels' costs would not be materially different in either venue and that the Bankruptcy Court lacks institutional knowledge of the parties apart from approving the retention of counsel. (Doc. 23 at 8). Thus,

Moncla has not carried its burden of showing the economics of the Debtor's estate administration warrant transfer.

The presumption in favor of the "home court" (i.e., the court in which the debtor's case is pending) tends to promote the economic and efficient administration of the estate. In re Harnischfeger Indus., Inc., 246 B.R. at 440. Yet, this presumption is weakened "where the proceeding is not a core proceeding but merely 'related to' the bankruptcy case." In re Gentry Steel Fabrication, Inc., 325 B.R. 311, 319 (Bankr. M.D. Ala. 2005). Moreover, this "home court" deference "exists to help the debtor," so courts find "very little reason" to support the home court presumption when the debtor is a non-movant and objects to the transfer. See In re Harnischfeger Indus., Inc., 246 B.R. at 440. Here, the Debtor is the non-movant and objects to the transfer. In other words, the Trustee is "not seeking to invoke the 'home court' presumption designed for his benefit." (Doc. 23 at 9). Thus, Moncla has not carried its burden of showing that the presumption in favor of the home court warrants transfer.

The "judicial efficiency" factor concerns "numerous issues" including: the home court's familiarity with the substantive issues and the law to be applied; the caseload of the respective courts; the respective availability of the courts for resolving discovery disputes and the timeline for trial. See In re Harnischfeger Indus., Inc., 246 B.R. at 440. Alabama law applies to this action. Thus, this Court has familiarity with the law to be applied. This Court does not have issues with respect to caseload or availability for resolving discovery disputes or with pacing towards trial. Therefore, Moncla has not carried its burden of showing that judicial efficiency warrants transfer.

Moncla does not address the "ability to receive a fair trial" factor, but the Trustee assumes that either court would provide a fair trial. Thus, Moncla has not carried its burden of showing that this factor warrants transfer.

Moncla does not address the state's interest in having local controversies decided within its borders, by those familiar with its laws. But Trustee notes that it "strongly favors venue in this Court." (Doc. 23 at 10). That is because the case involves the destruction of property in Alabama and Alabama law applies to the dispute. Thus, Alabama has an interest in deciding this matter while Mississippi does not. Accordingly, Moncla has not carried its burden of showing that this factor warrants transfer.

Neither party argues that the "enforceability of any judgment achieved" factor affects the transfer analysis. Therefore, Moncla has not carried its burden of showing that this factor warrants transfer.

"[I]f the movant has not proved by a preponderance of the evidence that the preceding factors weigh in favor of the transfer, then plaintiff's choice of forum remains the proper venue." In re Harnischfeger Indus., Inc., 246 B.R. at 442. Here, Moncla has failed to prove by a preponderance of the evidence that the other factors warrant transfer. Thus, the Trustee's choice of forum remains the proper venue.

    **ii.**    **The "convenience of the parties" prong does not warrant a transfer.**

The "convenience of the parties" prong requires consideration of five factors: (1) location of the plaintiff and defendant, (2) ease of access to necessary proof, (3) convenience of witnesses, (4) availability of subpoena power for the unwilling witnesses, (5) expense related to obtaining witnesses. See, e.g., In re Harnischfeger Indus., Inc., 246 B.R. at 437. Given the growth of technology, travel, and remote proceedings, most courts are convenient forums. See In re Caesars Ent. Operating Co., Inc., No. 15-10047 (KG), 2015 WL 495259, at *7 (Bankr. D. Del. Feb. 2, 2015) (concluding that Delaware and Illinois were convenient forums because of the growth of technology and travel); see also In re Cox Operating, LLC, 652 B.R. 49, 57 (Bankr. E.D. La. 2023)

11

(concluding that Houston and New Orleans were convenient forums because of the "short distance between Houston and New Orleans" and the growth of technology).

Taken together, the "convenience of the parties" factors do not support the transfer of venue. Although Escambia's principal place of business is in Mississippi (which favors transfer under factor one), the Incident occurred in Alabama (which favors no transfer under factor two). Moreover, the travel differences for witnesses between Mobile, Gulfport, and Jackson are short. Moncla largely quibbles over differences of tens of minutes and tens of miles (which makes factor three neutral). Likewise, factors four and five have no relevance in the analysis based on the parties' arguments. In short, Moncla has failed to prove by a preponderance of the evidence that a transfer is warranted for convenience of the parties.

### IV. Conclusion

This litigation is "related to" the Bankruptcy Case. Section 1412 governs whether transfer of venue is proper. Under section 1412, Moncla has failed to meet its burden of showing that a transfer is warranted. The motion is **DENIED**.

**DONE** and **ORDERED** this the **2nd** day of **January 2025**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**